### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| Jeremy Jones,<br><br>     Plaintiff,<br><br>v.<br><br>Nicole Fedo and Heather Kensey,<br><br>     Defendants. | Case No. 20-cv-2168 (WMW/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

      Plaintiff Jeremy Jones has been incarcerated at the Federal Correctional Institution

in Sandstone, Minnesota ("FCI Sandstone") since May 2019.  (Orig. Compl. at 1 [ECF

No. 1][1]; Orig. Compl. Ex. 2 at 3 [ECF No. 1-2][2].)  In this case, he alleges that prison

---

[1] Jones filed his Complaint, a 22-page handwritten document, on October 13, 2020 (hereafter "Original Complaint").  (Orig. Compl. [ECF No. 1].)  That document contains extensive factual information and legal citations.  Then, on October 23, 2020, Jones filed a new pleading—a form labeled a "Civil Rights Complaint" that Jones completed by hand (hereafter "Amended Complaint").  (Am Compl. [ECF No. 9].)  The Amended Complaint contained essentially no factual or legal information; when asked to provide supporting facts for his bare-bones allegations, Jones wrote "See Brief."  (*Id.* at 3–4.)  The Court interprets this as a reference to his Original Complaint, as there was no other plausible "brief" on the docket as of the filing date of the Amended Complaint.  Referencing the "brief" of his Original Complaint violates Local Rule 15.1(a), which makes clear that "any amended pleading must be complete in itself and must not incorporate by reference any prior pleading."  However, given the Court's obligation to liberally construe a pro se party's pleadings, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and the obvious effort Jones put into his initial filing, the Court will construe the Amended Complaint as supplemental to the Original Complaint, and will read the two documents together.

[2] Exhibit citations refer to the page number assigned by the ECF system.

employees at FCI Sandstone violated his right to due process and equal protection under the United States Constitution. (*See* Am. Compl. at 4 [ECF No. 9].) Jones sues Nicole Fedo, Case Manager at FCI Sandstone and Heather Kensey, Unit Manager at FCI Sandstone. (*See id.* at 2.) This matter has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1.

On April 2, 2021, Defendants filed a Motion to Dismiss (Mot. Dism. [ECF No. 25]), to which Jones responded on April 28, 2021. (Mem. Opp'n Mot. Dism. [ECF No. 33].) On May 7, 2021, Jones filed a "Motion to Add Claims Pursuant to Fed Rule of Civ Proc 15 and Local Rule 15.1(b)" (Mot. Am. [ECF No. 37]), seeking to add a third claim to his amended complaint (*see* ECF No. 39).[3] Defendants responded to that motion on June 1, 2021. (Mem. Opp'n Mot. Am. [ECF No. 49].) For the reasons stated below, the Court recommends granting Defendants' Motion to Dismiss, and denying Jones's Motion to Amend.

## I.    BACKGROUND

In his operative complaint, Jones makes two separate, largely unrelated civil rights

---

[3] Although ECF No. 39 is entitled "Memorandum of Law in Support," it appears that it is intended to be Jones's proposed addition to his operative complaint. [*See* ECF No. 38, stating that he is "attaching the amended complaint to this motion (See Memorandum of Law)".] Jones did not, however, as required by Local Rule 15.1(a), file a complete proposed amended pleading; rather, ECF No. 39 contains only the proposed new material. For ease of reference, the Court will refer to ECF No. 39 as the proposed second amendment or "PSA," but in so doing does not mean to suggest that the PSA meets the requirement of the complete, self-contained amended complaint required by Local Rule 15.1(a).

claims, one relating to his designation to the "separation" and "special supervision" categories in the prison's Central Inmate Monitoring System (CIMS), and the other arising out of his request to be released to home confinement under the Coronavirus Aid, Relief, and Economic Security Act, 18 U.S.C. § 3621 note (2020) (Bureau of Prisons) ("CARES Act").[4]

## A. Designation Under CIMS

Jones alleges that "in or around June 2020," during a "random" review of his central file, he discovered that, unbeknownst to him, he had been assigned a designation under the prison's Central Inmate Monitoring System ("CIMS"). (Orig. Compl. at 6.) Jones emailed Defendant Nicole Fedo, his case manager at FCI Sandstone, on May 27, 2020, asking about the basis for the classification and why he was not notified about it in writing. (*Id.*; Orig. Compl. Ex. 2 at 2–3.) Fedo replied to Jones on June 2, 2020, explaining that he had been notified of the designation upon his arrival at FCI Sandstone and had signed a document at that time acknowledging his CIMS designation. (Orig. Compl. at 6; Orig. Compl. Ex. 2 at 3.) Fedo told Jones he would need to submit a formal request via the Freedom of Information Act ("FOIA") for a copy of the document. (*See* Orig. Compl. at 6; Orig. Compl. Ex. 2 at 3.) Jones did so, and on July 28, 2020, he received a copy of a form, dated May 15, 2019, notifying him of his CIMS designation.

---

[4] In his Amended Complaint, Jones identifies 42 U.S.C. § 1983 as the legal basis for his claims. (Am. Compl. at 1 [ECF No. 9].) Section 1983 actions are only available against individuals acting under color of the law of "any State or Territory or the District of Columbia." Both Defendants in this case are *federal* actors. Because a *Bivens* claim is essentially the "federal analog" of a Section 1983 action, the Court construes Jones to be making a claim for relief under *Bivens*. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

The form was signed "Jeremy Jones." (Orig. Compl. Ex. 3 at 4 [ECF No. 1-3].) The form indicated Jones had been assigned to the "separation" and "special supervision" categories. (*Id.*)

The Bureau of Prisons ("BOP") designates an inmate for "separation" in CIMS when there is concern about housing that inmate with specific others. 28 C.F.R. § 524.72(f). The BOP designates an inmate for "special supervision" when the inmate requires special management supervision but does not fit within the defined categories of section 524.72. 28 C.F.R. § 524.72(g). The form Jones received did not identify the reason for the separation designation, but stated Jones required special supervision because he had formerly been employed by the BOP. (Orig. Compl. Ex. 3 at 4.)

Jones asserts that he neither saw nor signed this notification before he received the document in response to his FOIA request, and he does not know the basis for the "separation" designation. (Orig. Compl. at 7.) He claims the CIMS designation, in conjunction with a prior alleged error by the prison staff in calculating his "custody points," resulted in him being initially confined to the "low" security prison of FCI Sandstone rather than a "minimum" security camp.[5] (*Id* at 8–9.) He contends the restrictions of FCI Sandstone are "stigmatizing" and "qualitatively different from the punishment a person would receive at a minimum-security camp." (*Id.*) Additionally, he

---

[5] In 2019, Jones supplied evidence to Fedo that she used to correct his custody score, which he alleges qualified him for transfer to a minimum-security facility and "out" custody. (*Id.* at 8–10.) He alleges this error in his score was an abuse of discretion by BOP officials and that he should have started his imprisonment at a minimum-security camp. (*Id.* at 10–11, 15.)

alleges the imprisonment at FCI Sandstone exposes him to a greater risk of contracting the COVID-19 virus than if he were at a minimum-security camp, due to several health conditions that increase his risk of severe illness from the virus combined with the rapid spread of the virus within the FCI-Sandstone.  (*Id* at 12–15.)  Thus, he contends, Fedo violated his constitutional right to due process.

**B.    Request for Release Under the CARES Act**

Jones's second allegation relates to his June 25, 2020, request for home confinement due to COVID-19, which was denied by Defendant Heather Kensey, his unit manager at FCI-Sandstone.  (Orig. Compl. at 17; Orig. Compl. Ex. 6 at 2 [ECF No. 1-6].)  In considering requests under the CARES Act, BOP personnel must balance a number of considerations in deciding on the priority to be given to inmates' requests to be released to home confinement.  These include the inmate's COVID-19 risk factors; whether the inmate's primary offense was non-violent; whether the inmate had a current detainer; whether the inmate had a verifiable release plan; and the inmate's prison disciplinary record.  (Orig. Compl. Ex. 6 at 3–4.)  They were also directed to prioritize inmates who had served 50% or more of their sentence.  (*Id.*)  Furthermore, any inmate with medical needs that could not be met in the community was to remain in a BOP facility.  (*Id.* at 5.)

Kensey initially denied his request based on his lack of COVID-19 risk factors as established by the Centers for Disease Control (CDC), more than 50% of his sentence remaining, and violence in his criminal history.  (Orig. Compl. Ex. 6 at 2.)  Jones assembled evidence for Kensey and Fedo that he suffered from chronic kidney disease, obesity, hypertension, and asthma, all conditions which raise a person's risk for severe

illness from COVID-19 according to the CDC. (Orig. Compl. Ex. 5 [ECF No.1-5]; PSA at 2–3; PSA Exs. 1, 2 [ECF No. 40].) He requested reconsideration, (PSA Ex. 2), but he does not allege the result, though presumably Kensey denied him again.

Jones alleges the denial failed to consider his risk factors and contravened prison policy. (*See* Orig. Compl. at 18–19.) More to the point, he contrasts his treatment with that of a white inmate whose situation Jones claims was similar to or less compelling than his own, specifically with regard to risk of recidivism, COVID-19 risk factors, and history of violence. (*See id*. at 18–20.) Jones alleges that the other inmate, a white male, "was submitted for consideration" for home confinement while Jones, a Black male, had his application denied, in violation of his Fifth Amendment right to equal protection. (*Id.*)

Jones sues both Defendants in their individual and official capacities for both monetary and injunctive relief. (*Id*. at 2; Am. Compl. at 8.) On April 2, 2021, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that Jones's complaint fails to state a claim on which relief may be granted. On May 7, 2021, Jones filed his Motion to Add Claims, seeking leave to further amend his amended complaint.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the complaint must contain sufficient factual allegations for a court to conclude it plausible that the defendant is liable for the harms the plaintiff claims, and the plaintiff is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court "must take the well-

pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

Jones is acting pro se in this case, and so the Court is required to construe his pleading liberally. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that even if a claim "is not pleaded with legal nicety," the Court should construe the allegations so that the claim may "be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). The Court should not, however, "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Id.* Nor may the Court "assume the role of advocate for the *pro se* litigant." *Sneh v. Bank of N.Y. Mellon*, Case No. 12-cv-954 (MJD/JSM), 2012 WL 5519690, at *5 (D. Minn. Oct. 30, 2012), *report and recommendation adopted by* 2012 WL 5519682 (D. Minn. Nov. 14, 2012).

Regarding Jones's motion to amend, a plaintiff may amend pleadings once as a matter of right within a specified time, but after that requires the court's leave to do so again. Fed. R. Civ. P. 15. The court should freely give leave when justice so requires. *Id.* However, the court may deny leave at its discretion, and will do so particularly when the proposed amendment would be futile. *United Steelworkers of America, AFL-CIO v. Mesker Bros. Industries, Inc.*, 457 F.2d 91, 93 (8th Cir. 1972). If the amendment would not survive a motion to dismiss under Rule 12(b)(6), then that amendment is futile. *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1996). The Court first addresses Defendants' motion to dismiss and then Jones's motion to amend.

## III.    DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss Jones's claims on two principal grounds.  First, they argue that none of the claims against Defendants are cognizable under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  (Mem. Supp. Mot. Dism. at 3 [ECF No. 26].)  Relatedly, they argue that official capacity claims cannot be asserted under *Bivens* in any event.  (*Id.* at 12.)  Second, Defendants argue that they are entitled to qualified immunity as to the individual capacity claims because Jones does not plausibly allege that either Fedo or Kensey violated his constitutional rights.  (*Id.* at 11.)

### A.    Whether Jones's Claims Should Be Dismissed On the Ground That They Are Not Cognizable Under *Bivens*

*Bivens* and its progeny permit a damages claim against a federal officer in her individual capacity for a deprivation of constitutional civil rights.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017).  But the Supreme Court has made it clear that expanding the *Bivens* remedy beyond the already recognized contexts is a "disfavored judicial activity."  *Id.*  Therefore, a plaintiff may carry forward a *Bivens* action only so long as a court determines that the action can satisfy a two-step set of screening/limiting factors before considering the merits.  To decide whether a damages claim may be brought under *Bivens*, a court must determine whether the claim arises under a new *Bivens* context, and if so, whether "special factors counsel hesitation [in expanding the *Bivens* remedy] in the absence of affirmative action by Congress."  *Id*. at 1857, 63–64.

### 1.    Jones's Claims Arise in a New Context

Defendants contend Jones's claims do not arise under any of the three contexts

established in *Bivens* and two subsequent cases, *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980). The test for determining whether a context is new is fact-specific. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Ziglar*, 137 S. Ct. at 1859. Specifically, the Court held in *Bivens* that the plaintiff was entitled to recover money damages for any injuries he suffered because of the defendant agents' violation of the Fourth Amendment protection against unreasonable search and seizure. 403 U.S. at 397. The Court has subsequently expanded the types of cases for which the *Bivens* remedy may be available to include gender discrimination violations of equal protection as incorporated in the Fifth Amendment (*Davis,* 442 U.S. at 230), and deliberate indifference to a serious medical condition in violation of the Eighth Amendment (*Carlson,* 446 U.S. at 17–19). "Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause,' " *McKinney v. United States*, No. 17-CV-4156, 2021 WL 3856132, at *6 (D. Minn. Aug. 27, 2021), but in this case, that level of generality suffices for the Court's analysis, because the Court agrees that the existing claims are new *Bivens* contexts even with these generalized descriptions.

Jones's first claim—that Fedo violated his right to due process by failing to notify him of his CIMS designations and by allegedly forging his signature on the CIMS Notification form—clearly arises in a new context; it invokes neither the Fourth nor Eighth Amendments at issue in *Bivens* and *Carlson*, respectively, nor does it specifically involve the equal protection component of the Fifth Amendment's Due Process Clause as

challenged in *Davis*.

Jones's second claim—that Kensey violated his right to equal protection under the Fifth Amendment[6] when she denied his request for home confinement due to risk of exposure to COVID-19 but referred a white inmate's application for further review—fares no better. Of the three precedent cases, only *Davis* involves a claim somewhat overlapping Jones's. That claim, however, related specifically to gender discrimination in an employment setting. *See Davis*, 442 U.S. at 230. Broad parallels may exist between Jones's claim and the claim in *Davis*, but as the Supreme Court stated in *Ziglar*, "even a modest extension is still an extension." 137 S. Ct. at 1864; *see also Brown v. Cooper*, Case No. 18-cv-219 (DSD/BRT), 2018 WL 6977594, at *12 (D. Minn. Dec. 11, 2018) (declining to extend the *Davis* remedy to a correctional setting), *report and recommendation adopted*, 2019 WL 121943 (D. Minn. Jan. 7, 2019), *aff'd*, 787 Fed. Appx. 366 (8th Cir. 2019). Because Jones's equal protection claim against Kensey is for race-based discrimination in a correctional setting, it differs in a meaningful way from previous Supreme Court rulings and therefore arises in a new context under *Bivens*. The Court must therefore analyze whether special factors discourage expanding *Bivens* to cover this context.

### 2.    Special Factors Counsel Against Expanding *Bivens* to Recognize Jones's Claims

---

[6] The United States Supreme Court has recognized that although the Fourteenth Amendment does not apply to the federal government, the Fifth Amendment right to due process includes the right to equal protection. *Bolling v. Sharpe,* 347 U.S. 497 (1954).

If an attempted *Bivens* claim is in a new context, a court must consider any

"special factors counseling hesitation" in expanding *Bivens* to a new context. *Ziglar*, 137

S. Ct. at 1857–58 ("the inquiry must concentrate on whether the Judiciary is well suited,

absent congressional action or instruction, to consider and weigh the costs and benefits of

allowing a damages action to proceed.")  Defendants argue that in this case, special

factors preclude an extension of *Bivens* to Jones's due process and equal protection

claims.

One special factor recognized by the courts is whether "any alternative, existing

process for protecting the interest amounts to a convincing reason for the Judicial Branch

to refrain from providing a new and freestanding remedy in damages." *Wilkie v.

Robbins*, 551 U.S. 550 (2007).  "[T]he alternative relief necessary to limit *Bivens* need

not provide the exact same kind of relief *Bivens* would." *McKinney*, 2021 WL 3856132,

at *7.  *See also Minneci v. Pollard*, 565 U.S. 118, 129–30 (2012) (noting that a state tort

remedy may be an alternative even when it does not offer damage amounts and theories

of recovery that are congruent with a potential *Bivens* remedy).  "[E]ven remedies that

provide *no* compensation for victims and little deterrence for violators, such as

injunctions and writs of habeas corpus, trigger the general rule that, when alternative

methods of relief are available, a *Bivens* remedy usually is not." *Farah v. Weyker*, 926

F.3d 492, 502 (8th Cir. 2019).

As a federal prison, FCI Sandstone is covered by the BOP's administrative remedy

program, through which an inmate can seek a formal review of any complaint regarding

their confinement.  28 C.F.R. §§ 542.10–19.  For any given complaint, an inmate must

first attempt to informally resolve the issue with the staff.  *Id*. § 542.13(a).  If the issue

cannot be resolved informally, the inmate may submit a formal written Administrative

Remedy Request.  *Id*. § 542.14.  If the inmate's request is denied, he may appeal it to the

BOP's Regional Director and ultimately to the General Counsel's Office.  *Id*. §

542.15(a).  "No administrative remedy appeal is considered to have been fully exhausted

until considered by the BOP's Central Office."  *Brown*, 2018 WL 6977594 at *8.

 Jones alleges that he "requested the appropriate forms" to pursue his

administrative relief, but never received them.  (Orig. Compl. at 4.)  However, whether

Jones himself actually received relief through the administrative remedy is not the

question—instead, the Court must evaluate whether alternative remedies exist generally

for a claim of this sort.  *See Ziglar*, 137 S. Ct. at 1865 ("[T]he existence of alternative

remedies usually precludes a court from authorizing a *Bivens* action.").  The Court

concludes the BOP's administrative remedy program is an "alternative, existing process"

for protecting Jones's interests that "amounts to a convincing reason for the Judicial

Branch to refrain from providing a new and freestanding remedy in damages."  *Wilkie*,

551 U.S. at 550.  Because an alternative process exists for affording a remedy in a case

like this, *Bivens* should not be extended to the context of the due process or equal

protection violations alleged by Jones.

 Defendants point to another "special factor" that also counsels against extending

the *Bivens* remedy to Jones's claims.  Congress passed the Prison Litigation Reform Act

("PLRA"), 42 U.S.C. § 1997e, specifically to regulate civil rights litigation by prisoners.

*See Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) ("Beyond doubt, Congress enacted §

1997e(a) to reduce the quantity and improve the quality of prisoner suits[.]").  By

enacting the PLRA, Congress has explicitly weighed in on "the costs and benefits of

allowing a damages action to proceed."  *Ziglar*, 137 S. Ct. at 1858.  Clear regulatory

action of this sort gives the Court "sound reasons to think Congress might doubt the

efficacy or necessity of a damages remedy as part of the system for enforcing the law and

correcting a wrong," such that this Court "must refrain from creating the remedy."  *Id.*

Because of the factors weighing against the creation of a new context under

*Bivens*, the Court concludes that the *Bivens* remedy should not be extended to encompass

Jones's claims.  It therefore recommends that all of Jones's attempted *Bivens* claims

against both Defendants be dismissed with prejudice.

## B.    Whether Jones's Official Capacity Claims for Injunctive Relief Are Cognizable Under *Bivens*

Defendants argue that even if Jones's due process and equal protection claims are

cognizable under *Bivens,* they cannot in any event support a claim against Defendants in

their official capacities for injunctive relief.  (Mem. Supp. Mot. Dism. at 12.)

The Court notes at the outset that absent an explicit waiver of sovereign immunity,

a claimant cannot hold the United States or its officers in their official capacities liable

for monetary damages.  *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998).  Jones

points to no such waiver applicable to the types of claims asserted here.  Therefore, his

claims against Defendants in their official capacities survive only if the claims are both

cognizable under *Bivens* (which the Court has found they are not) *and* if *Bivens*

authorizes injunctive relief.  For the following reasons, the Court concludes that it does

not, such that even if Jones's claims were an appropriate extension of *Bivens,* those claims could not survive against Defendants in their official capacities.

The Supreme Court has not yet addressed the availability of injunctive relief under *Bivens*, but has consistently emphasized that monetary damages are the proper remedy. *See, e.g.*, *Carlson*, 446 U.S. at 18 ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official. . . ."); *Butz v. Economou*, 438 U.S. 478, 504 (1978) ("[T]he decision in *Bivens* established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official.").

The Eighth Circuit has acknowledged a question exists as to the availability of injunctive relief in a *Bivens* action, but has not resolved the issue. *See Archuleta v. Hedrick*, 365 F.3d 644, 647 (8th Cir. 2004) (concluding that it need not resolve the issue). However, the Second, Ninth, and Tenth Circuits have addressed the availability of injunctive relief in a *Bivens* action and determined that either the type of injunctive relief sought, or injunctive relief as a whole, was not available. *See Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016) (holding that the equitable relief sought would require government action and thus was not available to the plaintiff in her individual-capacity suit against a government official); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a Bivens action is an award for monetary damages from defendants in their individual capacities."); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) ("Some courts have characterized

constitutional claims to enjoin federal officials as *Bivens* claims," but "a *Bivens* claim lies against the federal official in his individual capacity—not, as here, against officials in their official capacity.").

The Court agrees with the reasoning of these courts. The injunctive relief Jones seeks would require official government action, but a *Bivens* claim "does not permit relief against a government employee in an official capacity." *Hill v. Holinka*, Case No. 06-cv-4720 PJD/JJG, 2008 WL 549928, at *2 (D. Minn. Feb. 27, 2008); *see also Solida*, 820 F.3d at 1093. This provides an additional ground for dismissal of Jones's attempted official capacity *Bivens* claims against Defendants.

### C.    Whether Defendants In Their Individual Capacities Are Entitled to Qualified Immunity

Defendants argue in the alternative that they are shielded from Jones's individual capacity claims by the doctrine of qualified immunity. (Mem. Supp. Mot. Dism. at 11.) If this Court's recommendation that Jones's claims be dismissed on the ground that they are not cognizable under *Bivens* is adopted, Defendants' qualified immunity arguments are moot. However, in the event the Court's recommendation above is not adopted, the Court turns now to the issue of whether the claims against either or both Defendants in their individual capacities should be dismissed on the alternative ground of qualified immunity.

In analyzing a claim of qualified immunity, a court must determine (1) "whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right;" and (2) "whether the right was clearly established at the time of the alleged

infraction." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). The plaintiff bears the burden to show these elements once a government defendant shows they may be immune. *Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018). "[A] court must dismiss a complaint against a government official in [their] individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants contend Jones has failed to state a plausible claim against either of them for the violation of a constitutional or statutory right, and that therefore they are entitled to qualified immunity. Because the claims against each Defendant are different, the Court addresses them one at a time.

### 1. Jones's Due Process Claim Against Fedo

The Due Process Clause of the Fifth Amendment protects a person from the federal government depriving him of his life, liberty, or property without first going through the constitutionally required due process. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Jones claims that he lost a constitutionally protected liberty interest through Fedo's alleged failure to provide him notice of the CIMS designation and the basis for it when he arrived at the prison, and through the allegedly falsified signature on the form. (Orig. Compl. at 7–8; Compl. Ex. 2 at 5.) Inmates have lesser due process protections against the loss of liberty than individuals who are not incarcerated. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Specifically in the context of an inmate's conditions of confinement in jail, the only liberty protected by the Due Process Clause is a "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life." *Id.* (quotation and citation omitted). In other words, a jail may change an inmate's conditions of confinement without following constitutional due process, so long as the change does not impose atypical and significant hardships.

Jones argues that his CIMS designation combined with the incorrect custody score inflicted an atypical and significant hardship on him because it led the BOP to consider him a "low custody" inmate requiring imprisonment in FCI-Sandstone, a low-security facility. (Orig. Compl. at 10–11.)[7] He contends that with his corrected custody score and a chance to contest the CIMS designation, he should have been imprisoned at a minimum-security camp, involving far fewer controls on inmate movement and daily activities, and many more opportunities for furloughs into the community for work

---

[7] Jones alleges that that it was an abuse of discretion for BOP officials to miscalculate his score and imprison him in FCI-Sandstone, and that BOP policy required the staff to redesignate him or transfer him, and he should have started his imprisonment in a minimum-security camp. (Orig. Compl. at 9–10). If he intends by this to raise an additional claim for "abuse of discretion," it fails. First, the score was corrected before this case was filed and therefore is no longer playing a part—to the extent it ever did—in the facility to which he was designated. Thus, there is no relief the Court could grant now that would relate to that score. Second, Jones does not name the officials responsible for the incorrect score calculation or facility decisions, nor does he allege that Fedo or Kensey played any role in those decisions (other than to correct the score on his prompting). Thus, he has not sufficiently alleged either Defendant's responsibility for the error. Third, his legal arguments focus on the alleged due process violation, and he has not identified any legal basis for a cause of action based on a since-corrected error in his custody score. Finally, *Bivens* does not allow him to pursue the injunctive relief of a transfer to a minimum-security camp. For all these reasons, Jones fails to state a plausible claim against either Defendant for "abuse of discretion" in connection with the erroneously calculated score.

details or medical concerns. (*Id.* at 10–11.) He argues that he had a liberty interest in being placed in the minimum-security facility.

Even if the Court assumes—without deciding—that (1) Jones has a liberty interest in being confined in a minimum-security camp, (2) Jones has plausibly alleged Fedo failed to notify him of the CIMS designation when he first arrived at FCI-Sandstone and forged his signature on the CIMS notice, and (3) the CIMS designation played a role in his placement at FCI-Sandstone rather than a minimum-security camp, (*id.* at 11), the Court concludes Jones has still failed to allege facts sufficient to advance a plausible claim that Fedo violated his right to due process.

The complaint alleges no involvement by Fedo in the CIMS designation other than notifying Jones of that designation. On the contrary, per BOP regulations, initial assignment to "special supervision" CIMS category requires authorization by the Regional Director or the Assistant Director of the BOP's Correctional Programs Division. 28 C.F.R. § 524.73(a)(3). Assignment to the "separation" category may be made by "a Community Corrections Manager or by appropriate staff at the Central Office, Regional Office, or institution." *Id.* (a). Nothing in Jones's complaint alleges or even suggests that Fedo had any role in the initial CIMS assignments.

Next, BOP staff are required to review all CIMS designations within 60 days of notifying the prisoner, and make decisions about removing those designations. 28 C.F.R. § 524.73(c). The Regional Office reviews "special supervision" assignments while the facility warden or their designee reviews "separation" assignments. *Id.* Jones does not allege that Fedo played any role in the review of his CIMS designations or the decisions

to maintain them.  Further, a prisoner has the right to appeal a CIMS designation at any time through the Administrative Remedy Program.  28 C.F.R. § 524.76.  Based on the allegations in the complaint, at most, Fedo's alleged failure to notify Jones merely delayed his ability to appeal the CIMS designation.  But nothing in the complaint supports a reasonable inference that an appeal of the designation will be successful, let alone that as a result of that theoretical redesignation, Jones would in fact be reassigned to a minimum-security camp.  Nor does the complaint allege facts from which one could reasonably infer that Fedo has any ability to influence the decision on appeal.  In short, nothing in the complaint plausibly alleges that Fedo had any responsibility for any aspect of the CIMS designation that purportedly contributed to Jones being imprisoned at FCI Sandstone.  Therefore, the Court concludes that Jones's complaint does not allege a plausible claim that Fedo violated his constitutional rights.  As a result, whether Defendants' argument is viewed as one under Federal Rule of Civil Procedure 12(b)(6) or under the first prong of the qualified immunity analysis, Jones's claim against Fedo for violating his Fifth Amendment rights to due process must fall.

### 2.    Jones's Equal Protection Claim Against Kensey

Jones's equal protection claim against Kensey presents a closer question.  Jones asserts Kensey violated his right to equal protection by exercising her discretion to recommend inmates for home confinement consideration with inappropriate racial motivations.  He alleges Kensey declined to recommend Jones for consideration for home confinement based on a mischaracterization of his COVID-19 risk factors and behavioral and criminal history factors.  (Orig. Compl. at 14–15, 17–20; Orig. Compl. Ex. 5; Orig.

Compl. Ex. 6 at 2.).  Yet, he alleges, she recommended a white inmate for home

confinement despite his prior history of violence and medium risk of recidivism.  (Orig.

Compl. Ex. 6 at 2, 6.)  Jones alleges her recommendations were motivated by intentional

discrimination against him as a Black person.  (Orig. Compl. at 20–21.)

As previously stated, Jones's claim for denial of equal protection arises under the

Fifth Amendment, not the Fourteenth Amendment, which applies only to the states.

However, the Supreme Court has stated that its "approach to Fifth Amendment equal

protection claims has always been precisely the same as to equal protection claims under

the Fourteenth Amendment."  *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217

(1995) (internal quotes omitted).

> "Equal protection analysis in the Fifth Amendment area is the same as that
> under the Fourteenth Amendment," *Buckley v. Valeo,* 424 U.S. 1, 93 (1976);
> see also *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638, n. 2 (1975); *Bolling,*
> 347 U.S. at 500. Taken together, these three propositions lead to the
> conclusion that any person, of whatever race, has the right to demand that
> any governmental actor subject to the Constitution justify any racial
> classification subjecting that person to unequal treatment under the strictest
> judicial scrutiny.

*Adarand Constructors*, 515 U.S. at 224 (cleaned up).

Defendants argue Jones does not plausibly assert a violation of his Fifth

Amendment right to equal protection in connection with the denial of his request for

consideration of home confinement under the CARES Act because federal inmates do not

have a protected liberty interest in serving their sentence at a particular institution, and

the CARES Act does not create such an interest.  (Mem. Supp. Mot. Dism. 9–12.)

*Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Moorman v. Thalacker*, 83 F.3d 970, 973

(8th Cir. 1996). They seem to argue that in the absence of a protected liberty interest, any claim for violation of equal protection is moot. (Mem. Supp. Mot. Dism. 10–12.)

The Court finds this argument unpersuasive. Even assuming for the sake of argument that Jones has no protected liberty interest in being released to home under the CARES Act, his right to equal protection applies against all forms of government-enacted racial classification or distinction unless justified by compelling government interests and narrowly tailored to achieve that interest. *Johnson v. California*, 543 U.S. 499 (2005); *Bolling*, 347 U.S. 497 (1954). The requisite strict scrutiny of racial classifications applies specifically in the context of prison officials' discretionary decisions and informal policies regarding housing. *Johnson*, 543 U.S. at 504–09 ("In the prison context, when the government's power is at its apex, we think that searching judicial review of racial classifications is necessary to guard against invidious discrimination."). The government has not suggested that there is a compelling government interest in distinguishing among inmates based on race for purposes of exercising its discretion under the CARES Act. Thus, regardless of whether Jones has a liberty interest in the BOP discretionarily assigning him to a specific form of housing, he has a constitutionally protected right to be free from the exercise of that discretion based on invidious racial animus.

But Jones's attempted equal protection claim against Kensey fails for a different reason, namely, that he has not asserted facts that give rise to a plausible claim that Kensey discriminated against him on the basis of race. "[U]nequal treatment of persons who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Batra*

21

*v. Bd. of Regents*, 79 F.3d 717, 721 (8th Cir.1996) (quotation omitted). "Discriminatory purpose can be proved with various kinds of direct and circumstantial evidence but is most often proved with evidence that similarly situated inmates were treated differently." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). "The similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group *for purposes of the challenged government action*." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) (emphasis added). For example, the Eighth Circuit has held that a Black plaintiff adequately pleaded a denial of equal protection when he "alleged that he and his white cellmate, who followed the same procedures in requesting an extra mattress and extra blanket, were similarly situated and that Officer # 084, for racial reasons, denied his, but granted the white inmate's, request for the items." *Powells v. Minnehaha Cty. Sheriff Dep't*, 198 F.3d 711, 712 (8th Cir. 1999). *Compare Owen v. Young,* No. 4:15-CV-04087-KES, 2015 WL 6812229, at *8–9 (D.S.D. Nov. 5, 2015) (motion to dismiss granted on inmate's equal protection claim arising out of warden's refusal to permit him to transfer money when he failed to allege sufficiently that the other inmates were similarly situated as to the relevant factors, including that they made the requests for similar reasons and had similar financial responsibilities).

Here, Jones has alleged some facts comparing his situation to that of one other inmate who is white and whose request Jones alleges was more favorably treated. (Orig. Compl. at 19.) But as already noted, in considering requests under the CARES Act, BOP personnel must balance a number of considerations in deciding on the priority to be given to inmates' requests to be released to home confinement. Jones's complaint compares his

situation generally with that of the white inmate in regard to only three of those
considerations, but he does not account for all of them; in particular, he only compares
the other inmate's history of violence, COVID-19 risk factors, and risk of recidivism.
(Orig. Compl. at 17–20.)  Furthermore, even as to those factors, he does not compare
them with sufficient specificity to give rise to a reasonable inference that the two were, in
fact, similarly situated.[8]  In other words, unlike *Powells,* in which the two prisoners were
cellmates and it was therefore reasonable to infer they were similarly situated with regard
to a request for extra bedding, Jones has not alleged sufficient facts to show that he and
the white inmate were "similarly situated" with regard to a request to be released to home
confinement, and that therefore the difference in treatment was attributable to racial
animus.  Nor has he alleged any other facts that would tend to show that Kensey's
treatment of him as opposed to the white inmate had "an element of intentional or
purposeful discrimination."  *See, e.g., Jones v. Gutierrez*, No. 521CV00655JAKKES, 2021
WL 2877458, at *10 (C.D. Cal. May 28, 2021), *report and recommendation adopted*, No.
521CV00655JAKKES, 2021 WL 2864867 (C.D. Cal. July 8, 2021).

 Accordingly, as with Jones's claim against Fedo, his claim against Kensey fails on
either Rule 12(b)(6) grounds or on the ground of qualified immunity because the

---

[8] In his response to Defendants' motion to dismiss, (ECF No. 33 at 12–13, 18–20), Jones
provides more details about the similarities and differences to this white inmate, and
raises a comparison to another inmate granted home confinement.  But he does not allege
these details in his original complaint, amended complaint, or PSA, and the Court will
not import them into the PSA in assessing whether the PSA is futile.

operative complaint does not plausibly allege that Kensey violated his right to equal protection under the Fifth Amendment.

## IV.    JONES'S MOTION TO AMEND HIS COMPLAINT

Jones moves to further amend his complaint to add a claim against Fedo and Kensey of deliberate indifference to a serious medical condition in violation of the Eighth Amendment. (PSA [ECF No. 39].) Jones has already amended his complaint once as a matter of right, and so he must obtain leave of court to further amend his complaint. Fed. R. Civ. P. 15(a)(2). Defendants argue that his proposed second amendment would be futile. (Mem. Opp'n Mot. Am. at 2.) The futility analysis under Rule 15(a) asks the same question as the analysis for a Rule 12(b)(6) motion to dismiss: whether the plaintiff presents a plausible claim upon which relief could be granted. *Smith v. United States*, No. 13-cv-3277 (JRT/LIB), 2015 WL 278252, at *6 (D. Minn. Jan. 22, 2015). That said, "[l]ikelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous." *Becker v. Univ. of Nebraska at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999).

Jones claims in his proposed second amendment that Fedo and Kensey showed deliberate indifference to his serious risk of contracting COVID-19 by refusing to submit him for further review for possible home confinement. (PSA at 1–6.) He alleges that he is afflicted with hypertension and associated chronic high blood pressure, asthma, chronic kidney disease, and obesity (i.e., a body-mass index over 30), all backed by medical evidence. (PSA at 1–2.) He also alleges that the CDC identifies these as risk factors for severe COVID-19. (PSA at 2–5.) He further alleges at least 800 inmates at FCI

Sandstone contracted COVID-19, with one death, and that he himself contracted it in November 2020. (PSA at 5.) He alleges that BOP staff are obligated by BOP policy to assess an inmate's risk for COVID-19, following the CDC's guidelines, when considering them for home confinement. (Orig. Compl. at 18.) He asserts that when he requested home confinement, however, Kensey denied his request by denying his risk factors and because he had not served more than 50% of his sentence. He subsequently informed Kensey and Fedo of his risk factors, but they denied him reconsideration. (Orig. Compl. at 17; PSA at 2–3; PSA Ex. 2 [ECF No. 40].

A deliberate indifference claim arises under the Eighth Amendment, which prohibits cruel and unusual punishments for those convicted of a crime. *Farmer v. Brennan*, 511 U.S. 825, at 832 (1994). Punishment includes the conditions in which the government confines a prisoner, and prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id*.

Relevant to this case, the Eighth Amendment forbids prison staffs' deliberate indifference to a prisoner's serious medical needs or substantial risk to the prisoner's future health and safety. *Saylor v. Nebraska*, 812 F.3d 637, 643–44 (8th Cir. 2016). Exposing a prisoner to an infectious disease can constitute deliberate indifference to a substantial risk of harm. *Helling v. McKinney,* 509 U.S. 25, 33 (1993); *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir.2006). This is true "even though it was not alleged that the likely harm would occur immediately and even though the possible infection

might not affect all of those exposed" and even when "the complaining inmate shows no serious current symptoms." *Helling*, 509 U.S. at 33.

An Eighth Amendment claim comprises both an objective and a subjective component. *Saylor*, 812 F.3d at 643. The objective component considers "whether a substantial risk to the inmate's safety existed." *Davis v. Oregon Cty., Missouri*, 607 F.3d 543, 548 (8th Cir. 2010). The subjective component considers "whether the officer had knowledge of the substantial risk to the inmate's safety but nevertheless disregarded it." *Id.* This "subjective component of deliberate indifference requires proof that [a defendant] actually knew of and recklessly disregarded this substantial risk of serious harm." *Butler*, 465 F.3d at 345 (quotation omitted). "[T]he plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (quotation omitted).

Defendants do not contest that Jones sufficiently alleges the objective component, i.e., that he was exposed to a substantial risk of severe COVID-19 due to his risk factors and the prevalence of the disease within FCI-Sandstone. Nor, as to the second, subjective prong, do they appear to contest that Jones has plausibly alleged that they knew of the risks associated with COVID-19, or that they were aware that Jones had certain risk factors that could make him more susceptible to serious illness should he contract the virus. They argue, however, that the motion to amend should be denied because the proposed amendment does not plausibly allege that either Kensey or Fedo deliberately and unreasonably disregarded that risk. (Mem. Opp'n Mot. Am. at 2–3.) In other words,

they argue, Jones has not plausibly alleged that their actions, within their respective areas of responsibility, evinced a deliberate disregard for Jones's safety.

Defendants advance several arguments in support of this position.  Defendants first argue that Jones fails to establish the subjective element because he does not sufficiently allege that Kensey or Fedo disregarded any medical information or failed to provide care suggested by a medical professional, or in any other way evinced a deliberate disregard for the risk to him when they weighed the factors and made a determination about whether to recommend him for release to home confinement. Rather, they contend, he simply disagrees with their decisions.  (Mem. Opp'n Mot. Am. at 3.)

The Court agrees.  Kensey first denied Jones consideration for home confinement due in part to his not having COVID-19 risk factors.  (Orig. Compl. Ex. 6 at 2.)  Jones then sent multiple communications to both Defendants detailing each of his risk factors for COVID-19 as part of another request for home confinement.  (PSA at 2–3; PSA Exs. 1, 2.)  Reading the pleading liberally, the Court assumes, therefore, that Jones intends to claim Defendants deliberately disregarded the known risks when they denied his second request to be considered for release to home confinement.  But he does not allege facts from which one might reasonably infer that either Kensey or Fedo disregarded those risks when they considered this second request.  He does not provide the results of the second request, nor does he identify in his PSA the reasons Fedo and Kensey gave for (presumably) denying it, let alone assert that they were so manifestly unreasonable as to evince a deliberate disregard for his safety.  Thus, his claim under the Eighth Amendment

appears to be based entirely on the fact that, despite being aware of his risk factors and the potential for exposure to COVID-19 within FCI-Sandstone, Kensey and Fedo did not recommend him for release to home confinement.  That alone is not sufficient to make out a plausible claim that Kensey and Fedo deliberately disregarded those risks.

As already discussed, Jones's COVID-19 risk factors were only one of several considerations that prison staff were directed to assess when deciding whether to recommend that an inmate be considered for home confinement.  (*See* Orig. Compl. Ex. 6 at 2–3.)  Jones does not—and cannot—allege that either Kensey or Fedo had the authority to discount or disregard those other factors in making their recommendations. That after considering those factors they concluded he should not be prioritized for release to home confinement does not in and of itself give rise to a plausible inference that either of them deliberately and unreasonably disregarded Jones's risk of developing severe COVID-19.  On this basis, therefore, the Court recommends that Jones's motion to amend his complaint be denied.[9]

For the sake of completeness, the Court addresses two other arguments made by Defendants.  Defendants point out that Jones's medical records, which he filed with his motion to amend, show that his case of COVID-19 (which he contracted after filing his

---

[9] Jones filed a reply to Defendants' memo opposing his motion to amend.  [ECF No. 53.] The Court issued an order before Defendants filed their memo declaring that "no further briefing will be permitted from either party [after Defendants filed their response to the motion to amend] and the motion will be taken under advisement on the papers."  [ECF No. 43.]  Jones did not seek leave to file a reply, and his reply is "further briefing" in violation of the Court's order; therefore, the Court did not consider it for this Report and Recommendation.

compliant but prior to this amendment) was asymptomatic when diagnosed despite his alleged risk factors, and as for any continuing risk, that he likely developed immunity that would prevent severe illness in the future. (Mem. Opp'n Mot. Am. at 3; PSA Ex. 3 [ECF No. 40].) But "[t]he question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his *future* health." *Farmer*, 511 U.S. at 843 (emphasis added). Whether the risk ultimately comes to pass without the prisoner being harmed is immaterial. *See Helling*, 509 U.S. at 33–35; *Crawford v. Coughlin*, 43 F. Supp. 2d 319, 325 (W.D.N.Y. 1999) (rejecting Defendants' argument that Plaintiff failed to meet the objective criteria because he was no longer exposed to the risk from the chemical fumes and showed no signs of injury). In other words, if Kensey and/or Fedo deliberately and unreasonably disregarded a serious medical risk to Jones from COVID-19, the fact that he was fortunate enough to have escaped serious injury, and the alleged unlikelihood of future harm due to any potential immunity he may now possess (even assuming the Court could take notice of that potential immunity at the motion to dismiss stage[10]), would not retroactively cure the constitutional violation.

Relatedly, Defendants argue that Jones has not alleged he has no access to a vaccine. (Mem. Opp'n Mot. Am. at 3.) But while the Court might be able to take

---

[10] Defendants' response includes a declaration by a BOP official and citations to medical information and news. (Mem. Opp'n Mot. Am. at 2–3.) But "[c]ourts evaluating futility do not consider matters outside the proposed amended pleading in deciding whether to permit the amendment." *Darmer v. State Farm Fire & Cas. Co.*, Case No. 17-cv-4309 (JRT/KMM), 2018 WL 6077985, at *1 (D. Minn. Nov. 21, 2018). Accordingly, the Court cannot consider the Defendants' additional material.

judicial notice that vaccines have been developed and that those vaccines provide some

measure of protection against COVID-19, nothing within the four corners of the PSA

indicates whether or when it became possible for those incarcerated at FCI-Sandstone,

such as Jones, to be vaccinated.  And, as already noted, if he had sufficiently alleged that

he was deliberately subjected to an unreasonable risk before the availability of a vaccine,

the subsequent offer of a vaccination would not render his claim futile.

## V.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that

1.    Defendants' Motion to Dismiss [Doc. No. 25] be **GRANTED** and
that all of Jones's claims against Defendants be **DISMISSED with
prejudice**; and

2.    Jones's Motion to Add Claims Pursuant to Fed Rule of Civ Proc 15
and Local Rule 15.1(b) [ECF No. 37] be **DENIED.**


Dated: _December 31, 2021                    /s Hildy Bowbeer
                                             HILDY BOWBEER
                                             United States Magistrate Judge


### NOTICE

Filing Objections: This Report and Recommendation is not an order or judgment of the
District Court and is therefore not appealable directly to the Eighth Circuit Court of
Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written
objections to a magistrate judge's proposed finding and recommendations within 14 days
after being served a copy" of the Report and Recommendation. A party may respond to
those objections within 14 days after being served a copy of the objections. See LR
72.2(b)(2). All objections and responses must comply with the word or line limits set

forth in Local Rule 72.2(c).